James S. Davis CALBAR NO.207963
Email: Jamesdee3080@msn.com
James S. Davis Attorney at Law
730 Broadway, Suite 102
Chula Vista CA 91910
(619) 934-4600
Of attorneys for plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COBBLER NEVADA, LLC, <br><br> Plaintiff, <br> v. <br><br> **DOE-68.7.61.76,** <br><br> Defendant. | Case No.: 3:15-cv-02031-GPC-JMA <br><br> MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND *EX PARTE* MOTION FOR LEAVE TO ISSUE AN FRCP 45 SUBPOENA AND MOTION FOR ADDITIONAL TIME TO SERVE COMPLAINT |

**INTRODUCTION**

Plaintiff Cobbler Nevada, LLC is the registered copyright owner of the motion picture *The Cobbler*. The Doe defendant is a BitTorrent user, or "peer," whose computer is interconnected with others and used for illegally copying and distributing plaintiff's motion picture to others. Plaintiff is suing the Doe defendant for using the Internet, specifically the BitTorrent file distribution network, to commit copyright infringement. The popularity has made

MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND *EX PARTE* MOTION                    1

it a target of significant piracy with hundreds of thousands of piracy acts traced to the State of California, many in this District. Plaintiff is attempting to address the infringement of its copyright and prevent further piracy and illegal distribution of its motion picture.

Plaintiff was granted leave to subpoena the Internet service provider ("ISP") for records of the identity of the party assigned the IP Address (IPA) used by the infringer. However this party may not be the infringer. Plaintiff requests leave to issue a FRCP 45 subpoena to the subscriber in an attempt to locate the infringer and submits this memorandum in support of its request, together with leave for additional time to serve the eventual summons and complaint.

## CONCERNS OF THE COURT

This Court, as well as others, has expressed concerns over the enforcement of the Copyright Act. The Copyright Act, with its notable ($150,000) statutory damages has been used for questionable and abusive exploitation. One very astute Court uncovered what was described as a "porno-trolling collective" that was taking advantage of the copyright laws to "plunder the citizenry." (Pg. 1-2, INGENUITY 13 LLC v. JOHN DOE, Case No. 2:12-cv-8333, C.D. Cal. May 6, 2013, Judge Otis D. Wright, Sanctions Order; Attached as Exhibit 1). Judge Wright noted there appeared to be a number of studios created to exploit individuals for the downloading of pornographic videos. *Id.* "They've discovered the nexus of antiquated copyright laws, paralyzing social stigma, and unaffordable defense costs…." *Id.* In these cases, Plaintiffs would offer settlements for a sum calculated to be just below the cost of defense, creating a situation in which a Defendant would reluctantly pay rather than have their names associated with illegally downloaded porn. *Id.*

The porno-trolls utilize fear tactics such as being stigmatized a social misfit and thief, in order to secure settlements often using the threat of being publicly associated with pornography as leverage to secure a settlement, regardless of any actual liability. Their litigation strategy consisted of monitoring the BitTorrent activity of their copyrighted pornographic movies, recording IP addresses of the computers downloading the movies, filing suit in federal court to subpoena Internet Service Providers ("ISPs) for the identity of the subscriber to the IP addresses, and sending cease-and-desist letters offering to settle for a sum of money. *Id* at Pg. 4. The porno-trolls had no desire to proceed in these lawsuits and when challenged they dismissed a case rather than face the scrutiny of the judicial process.

Of the many concerns of Judge Wright, as well as this Court, was the issue of the discovery process and steps taken to determine the actual infringer versus the subscriber to an internet service. In Judge Wright's order, he found with only the subscriber's subpoenaed IPA, a Plaintiff could only show that someone using that IPA was downloading. *Id.* at Pg. 6. Judge Wright was concerned that there was no further investigation to determine whether the subscriber actually downloaded the data or if someone else was using the subscriber's Internet access. *Id.* As per Judge Wright, and most Courts, it is unreasonable to name a subscriber just because their IPA was identified as infringing. A proper investigation should seek to determine the actual infringer, not just the subscriber, and name the proper defendant. *Id.* The actions on behalf of the porno-trolls lacked the intention to determine the identity of the actual infringer, or seek an injunction to stop the piracy and illegal distribution of their movie. As per Judge Wright, the strategy was to extort payment based on the fear of being exposed or stigmatized a social misfit and thief.

## PLAINTIFF'S LITIGATION

Plaintiff, Cobbler Nevada, LLC, is not a porno-troll. Plaintiff's goals are to seek statutory damages and injunctions against the continued piracy and the illegal distribution of its movie and other similarly situated artistic works through the BitTorrent network. Plaintiff is not attempting to extort payments out of fear or shame. Plaintiff has a policy of refusing settlement offers from parties that deny infringing as Plaintiff's goal is to secure injunctions against actual infringers and to *stop piracy*. When an actual infringer is found, Plaintiff will name the individual and seek an injunction and statutory damages against their further illegal use of BitTorrent, or any other peer-to-peer file sharing software used to continue further piracy and illegal distribution of its movie.

In its efforts to stop the piracy, illegal downloading and distribution of its movie and the works of other artists, Plaintiff has evaluated many different plans of action and has determined a cost efficient and effective method is to seek both statutory damages and injunctions from the courts. This is very different from the actions of the porno-trolls which are focused on monetizing, or profiting from piracy. The litigation may initially appear to be similar, however the actions and end results are very different.

Plaintiff's strategy is to:

1) Identify IP addresses that are involved in distribution of motion pictures at a high level through the BitTorrent distribution system, not one time users. These are the parties that are not simply downloading a motion picture, but are regularly distributing or "seeding" motion pictures to others. At any one time there are tens of thousands of infringers in this District. Plaintiff directs its actions at the "worst of the worst."

2) Investigate and identify the *actual individual responsible* for the infringing activities, not necessarily the subscriber. An injunction against a non-liable mere subscriber fails to address plaintiff's concerns.

3) Seek statutory damages and injunctive relief through the courts against the individuals found to be actual infringers. A fundamental purpose of the relief afforded by the Copyright Act is to provide deterrence. This deterrence is principally through exemplary and punitive damages of up to $150,000.

When subscriber information is provided by the ISP, the subscriber is notified of the infringing activity through an initial contact letter, proceeded with a follow-up letter if no response is received. In addition to the notification, the subscriber is requested to assist in the identification of the actual infringing party (Ex. # 2 and 3, letters). Now days, coffee shops, hotels, and schools provide free internet to their clients and students. In other cases, neighbors, friends, relatives, or actual hackers are using a subscriber's internet and are the actual infringing party. In many cases, when people are contacted by letter and cooperate, we are able to determine if the subscriber is or is not the actual infringer. In other cases, when there is no cooperation, third party depositions may be required to determine an actual infringer. This is very different than the actions of the porno-trolls, who receives subscriber information from an ISP and attempts to extort settlements without further investigation or effort to determine if the subscriber is the actual infringer.

Once an individual has been identified, with a fair degree of certainty, that individual is named as the Defendant and statutory damages and an injunction are sought from the court. In some cases an individual when contacted, admits to the infringing activity, and ask to settle the matter without being named or agreeing to an injunction. This type of settlement or agreement,

accepted by porno-trolls, has been rejected by the Plaintiff while represented by this office. Plaintiff will settle these matters in the most cost efficient manner for all parties, however, settlement requires an admission by the infringer and injunction. In using this litigation strategy, Plaintiff is truly attempting to stop the use of BitTorrent and other peer-to-peer file sharing networks from piracy, illegal downloading and distribution of its movie and other artistic works.

## MOTION FOR FRCP 45 DEPOSITION

In furtherance of both The Copyright Act and Plaintiff's goals, Plaintiff's investigator observed IP address 68.7.61.76 distributing Plaintiff's motion picture over 90 occasions between May 27, 2015 and September 5, 2015. The observations recorded are submitted as Exhibit 4. Plaintiff's investigator has also identified this IPA as associated with the distribution of over 30 other titles. Other titles observed associated with this IPA are submitted as Exhibit 5. As is clear, the infringer using this IPA is prolific and is causing notable harm to not only Plaintiff, but many others.

On September 11, 2015, Plaintiff filed its Complaint and Motion for Expedited Discovery. On September 25, 2015, the Court granted Plaintiff's motion and leave to subpoena the records of ISP, Cox Communication, for information identifying the subscriber associated with IP address 68.7.61.76. On September 28, 2015, a subpoena was served on Cox Communication. Pursuant to the Order of the Court, Cox Communication was given 14 days to notify the subscriber of the subpoena and an additional 30 days to provide the subscriber information to Plaintiff if the subscriber made no object. On November 27, 2015, Cox Communication provided Plaintiff with the subscriber information in response to the subpoena.

On November 17, 2015, prior to Cox Communication providing Plaintiff with the subscriber information on IP address 68.7.61.76, my office received a call from the subscriber regarding the subpoena they received from Cox Communication regarding the request for information related to their IP address. At that time, we informed the caller that we would be sending them a letter when the subscriber information was provided to the Plaintiff from Cox Communications. On November 30, 2015, Plaintiff sent the first letter to Mike Jardel 8788 Wahl Street Santee, CA 92071-3351, provided by Cox Communication as the name and physical address of the subscriber in attempts to investigate and determine if the subscriber was the actual infringing party. (Exhibit 2)

On December 3, 2015, I received a call in my office from a person who identified himself as Mike Jardel. This individual was very hostile and informed me that he felt this was a scam and that he had contacted the District Attorney's office to report me, and that I was being reported to the California State Bar. He went on to state that he had contacted Cox Communication and they told him that they had not sent anything to his address and that the subpoena and letter from Cox communication he received were fake. I offered to provide the caller with the court and case information and recommended that he contact an attorney. The call indicated that he was working with the District Attorney and I would be investigated and disbarred. The caller also indicated that he had done research on the internet on my office and BitTorrent litigation and it was all a scam. He informed me that he would not cooperate with my office in the investigation and that we should not contact him again.

On December 8, 2015 Plaintiff sent a second letter to Mike Jardel at 8788 Wahl Street Santee, CA 92071, and have received no response. The office of Plaintiff's counsel has not been contacted by any law enforce agency regarding an investigation.

At this time, Plaintiff requests permission to depose Mike Jardel to solicit information regarding the use of his internet service and the identity of the infringer. Plaintiff requests leave to issue an FRCP 45 subpoena for a 2 hour deposition to Mike Jardel the subscriber IP address 68.7.61.76 was registered to at the time of the infringing activity. When Cox Communication installs internet service to a location, that service is secured by a name and up to 16 digit password. This information would have to be provided to an individual by the subscriber, Mike Jardel, for access to use the subscriber's internet service. Mike Jardel has refused to cooperate in Plaintiff's attempt to locate the infringer and appears to be attempting to resist Plaintiff's attempts to locate the infringer by the use of threats of criminal prosecution and disbarment.

In the Ninth Circuit, the Courts have held that when the defendants' identities are unknown at the time the complaint is filed, courts may grant plaintiffs leave to take early discovery to determine the defendants' identities unless it is clear that discovery wouldn't uncover the defendants' identities, or there were other grounds in which the complaint would be dismissed. 808 *Holdings LLC v. Collective of December 29, 2011 Sharing Hash,* No. 12-cv-0186 MMA, 2012 WL 1648838, *3(S.D. Cal. May 4, 2012) (quoting *Gillespie v. Civiletti,* 629 F.2d 637, 642(9th Cir. 1980)). Courts routinely allow discovery to identify "Doe" defendants operating through the Internet. See generally *Voltage, et. al v. Does:* 3:14-cv-01241-AC, (D. OR); *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980) ("where the identity of alleged defendants [are not] known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants"); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be ascertained through discovery).

//

## MOTION FOR ADDITIONAL TIME TO SERVE

Fed. R. Civ. P. Rule 4 and Local Rule 4.1, require all summons and complaints, must be served within one hundred and twenty (120) days. In this case, Cox Communication provided the identity of the subscriber, however the Plaintiff has a duty to investigate to determine if this individual is the actual infringer. In determining if additional time will be granted, Plaintiff requests this Court to consider 77 of the 120 days to serve the Complaint were lost, while the ruling on Plaintiff's Expedited Motion for Discovery was made by the Court and time allowed Cox Communication to answer the subpoena and the additional time needed to depose the subscriber in this matter.

Unlike the porno-trolls, Plaintiff is looking for the actual infringer and naming the subscriber, without further investigation does an injustice to all parties involved in this type of litigation. Judge Wright, in his Order Issuing Sanctions, made clear the responsibility of Plaintiffs to perform a proper investigation prior to naming a subscriber. To perform the investigation, Plaintiff requests leave of the Court to perform an FRCP 45 deposition on Mike Jardel and additional time to identify the infringing party and serve the summons and complaint.

DATED: December 15, 2015.

/s/ James S. Davis
James S. Davis CALBAR NO.207963
Jamesdee3080@msn.com
619-934-4600
Of attorneys for the plaintiff